Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9033 | **DATE** | 4/12/2004 |
| **CASE TITLE** | In Re: IN RE: LARRY EDEN   96 B 4241   03 A 2204 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Pursuant to Memorandum Opinion and Order entered this day, the decision of the Bankruptcy Court is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | APR 1 3 2004 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK |
| | Copy to judge/magistrate judge. | 4/12/2004 date mailed notice |
| JS | courtroom deputy's initials | 2004 APR 13 AM 8:12 |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



APR 1 3 2004

| | |
|---|---|
| LARRY EDEN, ) | |
| Debtor. ) | Case No. 03 C 9033 |
| ) | Honorable James F. Holderman |
| ) | |
| LARRY EDEN, ) | |
| Plaintiff-Appellant, ) | |
| ) | On appeal from the United States |
| v. ) | Bankruptcy Court for the Northern |
| ) | District of Illinois – Chapter 13 |
| ROBERT A. CHAPSKI, LTD. and ) | |
| JEAN EDEN n/k/a JEAN EAKINS, ) | Case No. 96 B 04241 |
| ) | Adversary No. 03 A 02204 |
| Defendants-Appellees. ) | Honorable Manuel Barbosa |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Larry N. Eden ("Eden") appeals from an order of the Bankruptcy Court that dismissed his Amended Complaint in an adversary proceeding against Robert A. Chapski ("Chapski") and Jean Eakins ("Eakins"). Eakins is Eden's former wife, and Chapski was Eakins's attorney during the dissolution of Eden and Eakins's marriage. For the following reasons, the decision of the Bankruptcy Court is affirmed.

BACKGROUND

Eden petitioned for relief under Chapter 13 of the Bankruptcy Code on February 20, 1996.[1]

---

[1] These facts are taken from Eden's Amended Complaint unless otherwise noted. The Amended Complaint tendered to this court pursuant to Federal Rule of Bankruptcy Procedure

1



Chapski was included in the list of unsecured creditors in Eden's Schedule F as the holder of a disputed claim. Divorce proceedings between Eden and Eakins continued during the pendency of Eden's bankruptcy proceeding. Eden's Chapter 13 Plan was confirmed on August 2, 1996. Under the terms of this plan, Eden was to make payments of $1,088 a month over a term of 60 months to the Chapter 13 Trustee to be disbursed to the benefit of Eden's creditors.

On August 6, 1997, a State Court entered a judgment dissolving Eden and Eakins's marriage ("Judgment of Dissolution"). This judgment ordered Eden to pay his now ex-wife Eakins's attorney's fees in the amount of $17,500. This payment was payable jointly to Eakins and Chapski. Eden appealed this judgment. On December 18, 1997, the State Court entered an order awarding to Eakins her prospective attorney's fees in connection with her defense of Eden's appeal ("the Prospective Fee Order"). (In re Larry N. Eden, No. 98 A 01990, slip op. at 4 (N.D. Ill. Bankr. Nov. 26, 2002) (Ginsberg, Bankr. J.), Ex. C to Dkt. # 9) [hereinafter "Nov. 26 Order"]. Five months later, on May 21, 1998, the State Court entered a rule to show cause why Eden should not be held in contempt of court for failure to comply with the Prospective Fee Order. (Id. 4-5.) On September 22, 1998, the State Court entered a rule to show cause on account of Eden's alleged failure to pay

---

8006 as part of the record was missing pages 4-6. (Dkt #7). Therefore, this court retrieved the complete Amended Complaint from the Bankruptcy Court.

The record as a whole was prepared in an unprofessional and sloppy manner, which has made it difficult for this court to determine what exactly exists in the record. Specifically, none of the exhibits to the respective complaints and memoranda included in the record were placed properly. Instead of following their respective pleadings and memoranda, all of the exhibits were in the record after Docket number 13, which was listed as the last entry in the Index of Record on Appeal. Thus, the record consisted of the thirteen designated items, followed by all of the exhibits for these thirteen items. This court reviewed the grouped exhibits attached after docket number 13 and was able to determine to which complaint or memoranda each group of exhibits belonged. This task was not aided by the fact that several unmarked items were interspersed between these unmarked grouped exhibits.

the amounts due under the terms of the Judgment of Dissolution. (Id. at 5.)

On October 5, 1998, the attorney's fee amount increased when Chapski filed a petition in State Court in the amount of $8,964.24 for fees accrued in connection with Eden's appeal of the Judgment of Dissolution. Shortly thereafter, Eden made two filings in the Bankruptcy Court. Both of these came before Bankruptcy Judge Ginsberg. Neither of these filings are in the record before this court, but both are described in Judge Ginsberg's Nov. 26 Order, which ruled upon matters relating to these two filings and is present in the record before this court. On October 8, 1998, Eden filed a Motion to Enforce the Automatic Stay ("Oct 8, 1998 Motion to Enforce Automatic Stay"). Shortly after this motion was filed, the State Court found Eden in indirect civil contempt for failure to pay the Prospective Fee Order. On November 16, 1998, Eden filed a Verified Complaint for Injunction and Emergency Motion against Chapski ("Nov. 16, 1998 Complaint for Injunction"). On December 8, 1998, the State Court entered an agreed order ("Agreed Order") that stayed execution of a sentence for the finding that Eden was in indirect civil contempt. (Nov. 26 Order at 8.) This order between Eden, Eakins and Chapski required Eden to deposit funds into a trust account to satisfy the Prospective Fee Order pending the Bankruptcy Court's decision on Eden's two motions. (Id. at 9.)

On July 29, 1999, Judge Ginsberg entered an order ("July 29 Order"). This order forms the basis of nearly all of Eden's arguments on this instant appeal. It stated, in pertinent part:

THIS CAUSE coming on to be heard pursuant to Debtor's Motion to Enforce the Automatic Stay and Verified Complaint for Injunction . . . .

IT IS HEREBY ORDERED

1. That any allowed pre-petition claim owed to Robert A. Chapski, Ltd. (hereinafter "Chapski") may only be paid, pursuant to the confirmed plan,

3

through the Chapter 13 bankruptcy. That this Court will not make a finding that this pre-petition debt is determined to be non-dischargeable unless Chapski prevails in an adversary proceeding regarding that issue.

2. That any collection effort as to the aforesaid pre-petition debt is subject to the automatic stay 11 U.S.C. §362.

3. That any post-petition debt owed to Chapski is not dischargeable in this Chapter 13 bankruptcy.

4. That any collection efforts as to the post-petition or pre-petition debt is subject to the 11 U.S.C. 1306(a), and the Debtor's wages are property of the estate and are subject to the protection of the automatic stay of 11 U.S.C. §362, unless the stay is modified by this Court after proper notice and motion.

(In Re Eden, 98 A 01990 (N.D. Ill. Bankr. July 29, 2002), Ex. D to Dkt # 7). On November 30, 1999, Chapski and Eakins moved to modify the automatic stay, but according to Eden's Amended Complaint this motion was never granted and was eventually declared moot upon Eden's discharge from bankruptcy.

The July 29 Order, however, did not resolve all the issues raised in Eden's Nov. 16, 1998 Complaint for Injunction. On November 26, 2002 Judge Ginsberg again addressed the adversary proceeding begun by Eden's Nov. 16, 1998 Complaint for Injunction. (Nov. 26 Order at 1.) In the Nov. 26 Order, Judge Ginsberg specifically addressed a Motion for Turnover of Funds filed by Eden On November 12, 1999 in connection with his Nov. 16, 1998 Complaint for Injunction. (Id.) Judge Ginsberg rejected Eden's argument that the amounts tendered pursuant to the Agreed Order should be returned to Eden. (Id. at 13-17.) In doing so, Judge Ginsberg refused to find that the amounts tendered in the Agreed Order were wages protected by the automatic stay. (Id.) Judge Ginsberg also specifically addressed the July 29 Order. (Id. at 9-10.) Judge Ginsberg stated: "This Court's order of July 29, 1999 was intended to resolve all issues under 11 U.S.C. § 362 that had been properly noticed and presented in the Debtor's bankruptcy case." (Id. at 10.) Shortly before Judge Ginsberg's

Nov. 26 Order, on October 25, 2002, Eden was granted a discharge from bankruptcy.

On August 14, 2003 Eden filed an Amended Complaint in Adversary Proceeding No. 03 A 02204, which forms the basis of this appeal, requesting (1) the discharge of that Chapski's attorney's fees and (2) the recovery of the involuntary payments made by Eden to Eakins via a wage deduction State Court order.[2] Chapski and Eakins moved to dismiss the Amended Complaint, arguing that the issue of dischargeability had already been litigated in State Court, and that a hearing on the matter was heard in State Court on July 9, 2003.[3] (Dkt #8.) Eden's response to Chapski and Eakins's Motion To Dismiss admitted that the State Court had entered an order determining that the debt owed to Eden was nondischargeable, but argued that his adversary complaint presented a "purely Bankruptcy code issue regarding [Chapski and Eakins's] failure to" comply with the July 29 Order. (Dkt # 9.) Eden, throughout his materials submitted before this court, admits that the State Court judgment determined that Chapski's claim was nondischargeable.

On October 9, 2003, Bankruptcy Judge Barbosa granted the Motion to Dismiss. In doing so, Judge Barbosa ruled that the July 29 Order's provisions requiring relief from the stay "obviously speak[] to the pendency of the case" and that "[o]nce the case is concluded and a discharge granted,

---

[2]In his materials before this court, Eden twice briefly requests the turnover of funds involuntarily made to Eakins. The turnover of funds is not mentioned in any of his issues presented for review. Furthermore, Eden has not made a single argument, much less developed an argument, regarding the turnover of funds made to Eakins or why the bankruptcy court was in error for dismissing his Amended Complaint in that regard. Because Eden has made no attempt to present or develop an argument regarding the turnover of funds, he has waived the issue. Muhich v. C.I.R., 238 F.3d 860, 864 n.10 (7th Cir. 2001). Therefore, the only issue before this court is whether the Bankruptcy Court properly dismissed Eden's Amended Complaint that requested a ruling that Chapski's claim of attorney's fees be discharged.

[3]The Motion to Dismiss stated that dischargeability had been heard in Case No. 94 DK 124 by the Honorable Stephen Sullivan in the Circuit Court of Kane County.

5

the stay is terminated." (Dkt #13.) Judge Barbosa next responded to Eden's argument that the July 29 Order discharged Chapski's debt because it required Chapski to resolve his claim exclusively through the Bankruptcy Court. Judge Barbosa ruled "that such was not the intent of Judge Ginsberg" in the July 29 Order. (Id. at 6.) Judge Barbosa concluded that Judge Ginsberg would not "have intended a nondischargeable claim to be essentially discharged by not having it included in an amendment to a Chapter 13 plan that had already been approximately three years in administration." (Id.)

Judge Barbosa also concluded that the debt Eden sought to have discharged, fees owed his ex-wife's attorney, had already been found to be nondischargeable by the State Court after Eden had litigated the nondischargeability question before that court. (Id.) Finally, Judge Barbosa found that Eden "did not question the concurrent jurisdiction of the State Court to determine dischargeability of [Chapski's claim.]" (Id. at 5.)

ANALYSIS

In a bankruptcy appeal, this court examines the Bankruptcy Judge's factual findings for clear error and its legal conclusions de novo. Meyer v. Rigdon, 36 F.3d 1375, 1378 (7th Cir. 1994). A Motion to Dismiss in an adversary proceeding before a bankruptcy court is governed by Federal Rule of Civil Procedure 12(b). Fed. R. Bankr. P. 7012(b). Dismissal pursuant to Rule 12(b)(6) is proper only when it appears beyond a reasonable doubt that the plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 335 U.S. 41, 45-46 (1957). This court must accept the well-plead allegations of the complaint as true, and construe any ambiguities in favor of the plaintiff. Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002).

This court is reviewing the Bankruptcy Court's decision to dismiss Eden's Amended

Complaint. Despite Eden's invitations to do so, this court is not evaluating whether Chapski's claim should be discharged or the propriety of the State Court judgment that determined the debt was nondischargeable. Eden does not contest the Bankruptcy Court's finding that the State Court deemed Chapski's attorney's fees nondischargeable. Furthermore, Eden does not contest the res judicata effect of the State Court order, except to argue that the State Court order itself is "unenforceable and was an impermissible collateral attack on" the prior orders of Judge Ginsberg, including the July 29 Order, entered during Eden's bankruptcy. (Appellant's brief at 10.) After making this statement, Eden includes in his brief and issues for review a number of legal arguments why, contrary to the State Court ruling, Chapski's attorney's fees are not included in 11 U.S.C. 523(a)(5),[4] which excepts from discharge debts in the nature of alimony, maintenance or support. This court will not consider any of these arguments for the following reasons. First, as previously stated, this court is reviewing the propriety of the decision to dismiss Eden's complaint; not whether Chapski's claim is actually dischargeable. Second, these specific arguments regarding dischargeability were not presented to the Bankruptcy Court below, Muhich v. C.I.R., 238 F.3d 860, 864 n.10 (7th Cir. 2001), and therefore this court will not review them. Finally, and most importantly, Eden cannot avoid the res judicata effect of the State Court judgment (and then have this court determine the issue of dischargeability) by simply declaring to this court in conclusory fashion that the decision is "unenforceable." Because of the uncontested existence of a State Court decision on the issue of dischargeability, this court will only consider arguments raised by Eden

---

[4]This section states, in part, that a debt is not discharged upon the debtor's discharge from bankruptcy when that debt is "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court record." 11 U.S.C. 523(a)(5).

7

regarding whether that State Court decision should be accorded res judicata effect.

This court considers the issue of whether the July 29 Order mandated that Chapski's claim be dealt with exclusively through the Bankruptcy Court only because Eden argues that the State Court was without jurisdiction to make the ruling that the attorney's fees were nondischargeable.[5] According to Eden, the July 29 Order invoked exclusive federal jurisdiction over Chapski's claim, thereby depriving any state court of concurrent jurisdiction over the issue of dischargeability. It is necessary for Eden to make this argument, because, as he concedes in his materials before this court, a state court has concurrent jurisdiction to determine whether a debt is nondischargeable. (Appellant's Brief at 11.) Furthermore, there is no time limit for filing a complaint to determine dischargeability of a debt in the nature of support or alimony. See FRBP 4007(b). See also Ginsberg & Martin on Bankruptcy 11.7[A][2] ("A holder of a claim [in the nature of alimony or support] can, in effect, sit back in the bankruptcy case, do nothing . . . and then, after bankruptcy, sue the debtor in a state court for any unpaid balances.") Therefore, generally speaking, it was proper for Chapski to wait until Eden's discharge from bankruptcy to sue in a state court for a determination that the claim was not discharged. If the state court found the debt to be dischargeable, then Eden's

---

[5]While Eden argues extensively that the July 29 Order discharged his debt to Chapski, this argument is not pertinent. In essence, Eden's arguments that the July 29 Order discharged Chapski's debt are arguments that the State Court decision was wrong to make its ruling because res judicata should have barred Chapski's attempt to determine dischargeability in that State Court. This court agrees with Judge Barbosa that the July 29 Order did not discharge Chapski's claim. But even if this court ruled that the July 29 Order discharged Chapski's debt, Eden is wrong to assume that the State Court decision will not be given res judicata effect because it either was argued, or could have been argued, to that State Court that res judicata applied to Chapski's attempt to determine dischargeability. Eden has made no such argument to this court, and therefore has waived such argument, that a decision is not valid for res judicata purposes if that decision either erroneously concludes that res judicata does not apply or never considers the res judicata effects of a previous ruling.

8

discharge from bankruptcy would shield him from the debt. If the state court agrees the claim is nondischargeable, then Eden's discharge from bankruptcy would not shield him from the debt.

Faced with the State Court ruling that the debt is nondischargeable, Eden now argues that these general principles of bankruptcy law explained above were rendered inapplicable by the July 29 Order, which, according to Eden, not only acted to discharge his debt, but also invoked exclusive federal jurisdiction over Chapski's claim, thereby rendering the State Court without jurisdiction to make its ruling that Chapski's claim was not discharged. See Kalb v. Feurestein, 308 U.S. 433 (1940); see also 18A Wright Miller & Cooper Federal Practice and Procedure § 4428 (2d ed. 2002) ("Violation of exclusive federal jurisdiction . . . may leave a state judgment vulnerable to collateral attack."). In Kalb, the Supreme Court explained that while "it is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack[,] . . . . Congress . . . may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally." Kalb, 308 U.S. at 438-39. Eden points to no "specific bankruptcy legislation" that allows a federal bankruptcy judge to render a later state court judgment vulnerable to collateral attack by way of an order from that bankruptcy judge requiring a dischargeability issue to be determined in federal court. In fact, Congress has created concurrent jurisdiction with state courts allowing those courts to apply Congress's specifically legislated exceptions to the general rule that debts are discharged. Nevertheless, Eden argues that Judge Ginsberg's July 29 Order not only can be interpreted to invoke exclusive federal jurisdiction, but that of its own accord it can render a later state court decision vulnerable to collateral attack.

Even assuming that the July 29 Order could divest the State Court of jurisdiction to rule on

9

dischargeability, this court would still affirm the dismissal of the Amended Complaint because the July 29 Order cannot be interpreted to invoke the exclusive jurisdiction of the federal courts so as to deprive a later state court of its concurrent jurisdiction to determine dischargeability. Eden focuses on Judge Barbosa's use of the word "intent" in his decision to dismiss the Amended Complaint and makes numerous arguments to this court regarding the interpretation of contracts and judicial orders. Regardless of the propriety of Judge Barbosa's language, the fact remains that the July 29 Order on its face cannot be interpreted to divest a state court of its concurrent jurisdiction to determine the dischargeability of Eden's debt to Chapski. Therefore, Eden's attempt to use the July 29 Order to avoid the res judicata effect of the State Court decision fails.

Eden also attempts to avoid the State Court judgment by arguing that it is void for violating the automatic stay. It has long been the law that actions taken in violation of the automatic stay are void. See See Kalb v. Feurestein, 308 U.S. 433 (1940); In re Schwartz, 954 F.2d 569, 572 (9th Cir. 1991) (listing cases). Judge Barbosa concluded that Chapski's instant attempt to collect fees in State Court after Eden's discharge could not violate the automatic stay because the stay ended when Eden was discharged. However, Eden argues that this ruling impermissibly ignores the litigation concerning his divorce that continued throughout his bankruptcy and resulted in the instant attempt to collect fees. Specifically, Eden asks this court not only to declare the State Court decision of nondischargeability void for being in violation of the automatic stay, but Eden also argues that "[t]he divorce trial was *void ab initio*" (Appellant's Reply at 3). Therefore, according to Eden, this court should rule that the Judgment of Dissolution, which includes determinations of child support and child custody, is void.

The parties argue over whether there is factual support in the record for the assertion that

divorce proceedings took place during the pendency of Eden's bankruptcy. Eden's Amended Complaint alleges the existence of such proceedings (Amended Complaint ¶ 4), and at this stage of the litigation that allegation must be considered true. Nevertheless, the State Court ruling determined Chapski's claim to be nondischargeable. This finding of nondischargeability also excepts the litigation resulting in that finding from the automatic stay. 11 U.S.C. 362(b)(2); In re Gianakas, 917 F.2d 759, 764 (3d Cir. 1990) (explaining that once a debt is found to be in "the nature of alimony, maintenance or support . . . [i]t follows that the debt was not dischargeable and was unaffected by the automatic stay."); In re Virden, 279 B.R. 401, 406 (D. Mass. Bankr. 2002) ("It is well settled that the scope of the reference to alimony, maintenance or support contained in [the automatic stay exception of] Section 362(b)(2)(B) is consistent with that contained in [the exception for dischargeability in] Section 523(a)(5).") Terio v. Terio, No. 93 CIV. 4378, 1994 WL 141980, at *5 (S.D.N.Y. Mar. 16, 1994) (explaining that the Second Circuit's previous ruling that attorney's fees incurred in connection with a divorce proceeding fell within "11 U.S.C. 523(a)(5), which renders debts for alimony, maintenance or support nondischargeable . . . . [c]learly indicates that the award of attorney's fees in collecting alimony, maintenance or support falls within the exception to the automatic stay of section 362(b)(2).")

## CONCLUSION

Accordingly, the decision of the Bankruptcy Court is affirmed.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
United States District Judge

DATE: April 12, 2004

11